JOURNAL ENTRY AND OPINION
This is an appeal from a decision by Visiting Judge Thomas O. Matia that denied a motion for directed verdict by appellants Walter P. Roman, William Gold, the Estates of Ronald Gold and Spencer Shaeffer, Mary Gold, Jason Gold, Beth Goings and Melissa Kampf (Victims and Family), during their automobile-related negligence trial against the Estate of Nino Gobbo. They contended that the sudden medical emergency doctrine should not be a defense to negligence per se. We cannot agree and affirm.
The record reflects that on March 15, 1999, Nino Gobbo, age seventy-seven and Frances Gobbo were returning from a trip to Indiana. Mr. Gobbo was driving his 1987 Nissan Maxima eastbound on Brookpark Road toward West 130th Street when it suddenly accelerated, ran into the driver's side of a Chevrolet van in the outside lane northbound on West 130th, and continued northbound, weaving and accelerating, until it drove over a road sign to its right, then veered left and crossed into the southbound lanes. It collided head-on with a Lincoln driven by Spencer Shaeffer with Ronald and William Gold as passengers, hit another car, and then struck a minivan driven by Walter Roman, which caused the Maxima to stop. At that point, Gobbo was ejected from the car. Gobbo, Mrs. Gobbo, and Ronald Gold were pronounced dead at the scene; Shaeffer died after reaching a hospital. Roman's injuries included two broken ankles requiring surgeries and extensive therapy, and William Gold received relatively minor injuries.
Gobbo had a long history of heart problems, had undergone a coronary bypass operation in 1979, suffered from angina and saw his treating physician, Dr. Mohan Patel, regularly. He also suffered from claudication, a condition caused by a thinning of the arteries in the legs, and characterized by pain or cramping of the legs after prolonged periods of standing.
Victims, a victim's wife, dead victims' estates and children of dead victims sued Gobbo's estate, alleging negligence in the operation of motor vehicle. Its answer denied liability on the theory that Gobbo encountered a sudden medical emergency, unexpected cardiac death,[1]
prior to the collision with the van at West 130th and Brookpark Road. The case was bifurcated and proceeded to jury trial only on the issue of liability.
At the close of all the evidence, both sides moved for a directed verdict. Victims and Family asserted that the defense of sudden emergency should be abolished because, given the existence of mandatory automobile liability insurance, it unfairly and archaically deprives compensation to injured innocent victims of negligent drivers. Gobbo's estate argued that, based on the evidence, there was no material question of fact about Gobbo's incapacitation caused by sudden cardiac death prior to the initial collision. The judge denied both motions. The jury found for Gobbo's estate and answered through interrogatories that Gobbo was negligent per se when his car crossed the center line, but that a sudden emergency, which he had no reason to foresee (the cardiac death), prevented his compliance with the traffic laws and extinguished his liability for any resultant damages.
The Victims and Family assign two errors for our review:
 I. THE TRIAL COURT IMPROPERLY DENIED PLAINTIFFS' MOTION FOR DIRECTED VERDICT BECAUSE THE SUDDEN MEDICAL EMERGENCY DOCTRINE SHOULD BE ABOLISHED AS A DEFENSE TO NEGLIGENCE PER SE.
 II. THE TRIAL COURT IMPROPERLY DENIED PLAINTIFFS' MOTION FOR A DIRECTED VERDICT BECAUSE AN INDIVIDUAL WHO HAS KNOWLEDGE OF A SERIOUS MEDICAL CONDITION SHOULD BE HELD TO ASSUME THE RISK OF INJURY TO HIMSELF AND OTHERS WHEN DRIVING AN AUTOMOBILE ON A PUBLIC ROADWAY AND SHOULD THUS BE PRECLUDED FROM ASSERTING THE DEFENSE OF SUDDEN MEDICAL EMERGENCY.
The Victims and Family object to the existence of the sudden medical emergency doctrine arguing that, where there has been a violation of a traffic law enacted for the protection of other motorists, a violation of the law alone should give rise to strict liability to ensure compensation for the innocent injured.
Under Civ.R. 50(A)(4), a judge may properly grant a motion for directed verdict when, after construing the evidence most strongly in favor of the party against whom the motion is directed, he finds that reasonable minds could come to but one conclusion on a determinative issue, and the conclusion is adverse to the non-moving party.[2] Review of the grant or denial of a motion for directed verdict is de novo.[3]
Victims and Family contended at trial that Gobbo violated R.C. 4511.25
in crossing the center line and violated R.C. 4511.21 in exceeding the speed limit on West 130th. Gobbo's estate agreed, and the jury so found. A violation of R.C. 4511.25 may be negligence per se,[4] but a motorist may rebut the presumption of negligence by demonstrating that an unforeseen, uncontrollable circumstance caused the violation. An emergency which will relieve a motorist of his duty to comply with a safety statute regulating vehicular traffic must arise as the result of something over which he has no control * * *.[5]
Where the driver of an automobile is suddenly stricken by a period of unconsciousness which he has no reason to anticipate and which renders it impossible for him to control the car he is driving, he is not chargeable with negligence as to such lack of control.[6]
The Victims and Family, however, contend that the violation of traffic safety laws because of sudden, unexpected medical emergencies are like the violation of those same laws resulting from a mechanical failure of automobiles themselves.[7] In such cases, they argue, liability attaches because of the mandatory duties imposed by statute. They argue that there is no factual distinction between accidents caused by any automobile maintenance failures or the sudden onset of a medical condition because, in all cases, the circumstances giving rise to the injury of an innocent motorist is unforeseeable and the mishap and damages result from the violation of a statute meant to protect the general public. Additionally, they cite one Ohio common pleas court that has adopted that rationale.[8]
Gobbo's estate counters by referring to our recent decision in Vinci v. Heimbach,[9] where a driver had a seizure, causing a collision. Prior to the accident, he had taken medication regularly to control his condition, and had not experienced a seizure for thirty years. The trial judge declined to adopt a policy holding epileptics strictly liable for accidents caused by seizures, but focused on the precautions taken by the driver to control his epilepsy and the infrequent nature of his episodes. When the judge granted summary judgment to the driver he held that [t]here is no evidence to establish: (1) a reasonably foreseeable risk from defendant's operation of his vehicle while he was under medication, (2) a likelihood that defendant would suffer a seizure any greater than that of any member of the general public, or (3) a likelihood that an accident would occur sufficient that a reasonably prudent person would act differently from defendant in the case at bar.[10] In cases where a sudden health problem renders a driver unable to control a vehicle, the general standard revolves around the driver's ability to anticipate or foresee the onset of the medical condition.[11]
Since the Victims and Family did not press at trial, or offer here, evidentiary arguments in reference to their directed verdict motion, we interpret their assignments of error as a request to evaluate the evidence presented in the record without applying the test set out in the syllabus in Lehman v. Haynam, supra, and instead to direct a liability verdict in their favor based upon Gobbo's violations of R.C. 4511.25 and 4511.21.
We agree with the rationale embodied in Vinci, supra, however, as do all the Ohio appellate courts that have visited the issue of liability of a motorist causing injury after suffering an unexpected heart attack.[12]
While Ohio Supreme Court precedent, as noted above, imposes liability on defendants who have initiated accidents due to the mechanical failure of their vehicles, Lehman v. Haynam, supra, is the binding Supreme Court precedent which directly addresses the issue of liability for harm caused by the sudden onset of a debilitating medical episode. Ohio law shifts the inquiry in such an instance from whether a traffic law has been violated to whether the potential tortfeasor has been negligent in driving at all, given the state of his or her health. We find this policy preferable to the strict-liability standard proposed by the Victims and Family because while vehicular maintenance is to some degree under the control of any motorist, unanticipated, sudden health emergencies clearly are not. Even while holding that the violation of R.C. 4511.25 resulted in liability for the driver in a case of mechanical failure, the Ohio Supreme court observed that only an unexcused violation of the statute would result in liability, and continued:
 An emergency which will relieve a motorist of his duty to comply with a safety statute regulating vehicular traffic must arise as the result of something over which he has no control. A self-created emergency, one arising from the driver's own conduct or from circumstances under his control, cannot serve as an excuse.[13]
The judge who decided the Victims and Family's only case in support misapplied the Supreme Court's ruling in Spalding, supra, in fashioning his own rule of law.[14]
Accordingly, cases where mechanical failures cause accidents are evaluated under the same standard as are those in which unforeseen, incapacitating medical conditions cause violations of statute, leading to damages. The strict liability approach to the allocation of responsibility espoused by the Victims and Family would expose a driver with a manageable, controlled cardiovascular condition, or no heart condition at all, to absolute liability for harm caused by an unexpected heart attack or stroke. We believe an intermediate appellate court should not effect such a major shift in Ohio case law. The two assignments of error are without merit.
Judgment affirmed.
It is ordered that the appellee shall recover from the appellants costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, ADM. J., and TIMOTHY E. McMONAGLE, J., CONCUR.
[1] Sudden cardiac death is a term which describes a heart attack or debilitating arrhythmia accompanied by an instantaneous complete loss of consciousness.
[2] See Civ.R. 50(A)(4).
[3] Grau v. Kleinschmidt (1987), 31 Ohio St.3d 84, 90, 509 N.E.2d 399; Steppe v. K-Mart Stores (1999), 136 Ohio App.3d 454, 737 N.E.2d 58.
[4] Oechsle v. Hart (1967) 12 Ohio St.2d 29, 231 N.E.2d 306.
[5] Id.
[6] Lehman v. Haynam (1956), 164 Ohio St. 595, 133 N.E.2d 97, syllabus paragraph two.
[7] See Stump v. Phillians (1965), 2 Ohio St.2d 209, 207 N.E.2d 762
(dealing with the mandatory duty to maintain brakes under R.C. 4513.20) and Moore v. Siebelt (1966), 6 Ohio St.2d 115, 216 N.E.2d 62 (dealing with an accident caused by an unanticipated tire blow-out).
[8] Canis v. Fleps (Jan. 6, 1992), Mahoning C.P. No. 88 CV 631, unreported.
[9] (Dec. 17, 1998), Cuyahoga App. Nos. 73440 and 73464, unreported.
[10] Id.
[11] Id.
[12] See, e.g., Rasdick v. Estate of Kuester (July 10, 1998), Carroll App. No. 686, unreported; Griffith v. Hoile (Jan. 12, 1998), Hancock App. No. 5-97-23, unreported; Fitas v. Estate of Baldridge (1995),102 Ohio App.3d 365, 657 N.E.2d 323; Jenkins v. Morgan (1988),57 Ohio App.3d 40, 566 N.E.2d 1244.
[13] (1965), 2 Ohio St.2d 1, 6, 205 N.E.2d 890, 894.
[14] Canis v. Fleps (Jan. 6, 1992), Mahoning C.P. Case No. 88 CV 631, unreported.